419 A.2d 665

**Tracy L. SHEARER, a minor, by Dolores Shearer, her guardian; and Dolores Shearer, in her own right,**

v.

**John Henry MOORE.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE.**

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed April 3, 1980.

72

Kellen McClendon, Assistant Attorney General, Pittsburgh, for appellant.

No appearance entered nor briefs submitted for appellees.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.*

WIEAND, Judge:

In this appeal we are asked to decide whether the Commonwealth of Pennsylvania, which has made medical assistance payments to a minor welfare recipient and which claims reimbursement from the proceeds of a settlement achieved by its recipient with a third party tortfeasor, can be ordered by a court of competent jurisdiction to pay a proportionate part of the fees of counsel whose efforts achieved the settlement.

On April 13, 1974, Tracy L. Shearer, appellee, was struck and seriously injured by an automobile driven by John Henry Moore. From April 13, 1974, to April 26, 1974, the Department of Public Welfare (Commonwealth) paid to Allegheny General Hospital the sum of $1,703 as medical assistance payments for treatment of Tracy's injuries. From April, 1974 to October 18, 1976, the Commonwealth also paid Tracy's guardian and grandmother, Dolores Shearer, the sum of $1,977.77 as aid–to–dependent children assistance (A.D.C.).

Dolores Shearer filed a trespass action in her own right and on behalf of Tracy against John Henry Moore on March 17, 1976. The parties ultimately agreed to a settlement for $20,000, and the court below was requested to approve the

* Judge DONALD E. WIEAND is sitting by special designation.

settlement and order distribution of the proceeds. The Commonwealth intervened and demanded reimbursement of all the moneys advanced to Tracy for her care following the accident. On December 22, 1976, the lower court denied the Commonwealth's claim for reimbursement of medical assistance payments and also the A.D.C. assistance. The Commonwealth appealed, and the Superior Court affirmed the denial of the claim for reimbursement of A.D.C. assistance without prejudice so that the Commonwealth might pursue other authorized means for collecting the claim. The record was remanded to the lower court, however, "for reconsideration of its order approving settlement of the suit against the third party so as to allow the Commonwealth's claim for medical assistance, with such deductions therefrom it decides reasonable in its discretion; . . ." See: *Shearer v. Moore*, 255 Pa.Super. 246, 386 A.2d 600 (1978). On remand, the lower court charged the Commonwealth its pro rata share of Tracy's attorney fees ($567.66) and expenses ($17.03), thus reducing the Commonwealth's recovery for medical expenses to $1,118.31. In the instant appeal, the Commonwealth contends that the lower court abused its discretion because such a deduction was not authorized by and is precluded by law.

■ It is not disputed that the Commonwealth has a right to obtain reimbursement for medical assistance payments from the assets of the recipient. This right of repayment is based not only upon statute, see The Support Law, Act of June 24, 1937, P.L. 2045, No. 397, § 4, as amended, 62 P.S. § 1974, but on common law principles as well. See: *Commonwealth, Dept. of Public Assistance v. Schuylkill County*, 361 Pa. 126, 62 A.2d 922 (1949); *Reiver's Estate*, 343 Pa. 137, 22 A.2d 655 (1941); *Waits' Estate*, 336 Pa. 151, 7 A.2d 329 (1939). The purpose of the repayment requirement is twofold: "The one [reason] rests on the basic principle that public assistance supplements resources and that whenever assistance is granted in lieu of the utilization of certain resources, the assistance should be repaid whenever these resources become available. The second reason relates to

the financing of the program since reimbursement results in a recovery of money that is then available for redistribution as assistance, thereby reducing to this extent the need for additional tax revenues." *Castleberry v. Commonwealth, Dept. of Public Welfare,* 36 Pa.Cmwlth. 480, 486–87, 387 A.2d 1360, 1363 (1978). See also: *Charleston v. Wohlgemuth,* 332 F.Supp. 1175, 1178 (E.D.Pa.1971), *aff'd mem.,* 405 U.S. 970, 92 S.Ct. 1204, 31 L.Ed.2d 246 (1972); 55 Pa.Code § 257.21.

The property liable for reimbursement is defined in Section 4(a) of The Support Law, 62 P.S. § 1974(a), as follows:

"(a) Except as limited by subsection (c) hereof, the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, *or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted.* Any public body or public agency may sue the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children." (Emphasis added.)

■ Several remedies are available by which the Commonwealth may recover reimbursable funds. The Commonwealth may sue the recipient of assistance. Such suit must be commenced by original process in the court of common pleas. *Commonwealth, Dept. of Public Welfare v. Livingood,* 22 Pa.Cmwlth. 530, 349 A.2d 816 (1976); *Perkins v. Yellow Cab Co.,* 49 D. & C.2d 297 (1970). Section 5 of The

Support Law, supra, 62 P.S. § 1975, also authorizes the Commonwealth to sue a third party tortfeasor against whom its recipient has a cause of action. If the amount due has been reduced to judgment, the Commonwealth may be substituted as plaintiff in the judgment. E. g., *Daniel v. Sochacky*, 20 Pa.Cmwlth. 217, 341 A.2d 589 (1975). Still another method for repayment results when the recipient executes an "Agreement and Authorization to Pay Claim" form (PA–176K) by which the recipient agrees to repay the amount of the assistance claim. As security, the agreement contains a confession of judgment clause which enables the Commonwealth to enter judgment for up to $2,000. According to the terms of such an agreement, the recipient agrees to pay its own legal costs and expenses in recovering money from a third party. This form is merely an affirmation of the statutory liability, established by 62 P.S. § 1974, to make reimbursement; it does not give the Commonwealth any position other than its rightful one of common creditor and is not "tantamount to legal process." *Congleton v. Pa. Dept. of Public Welfare*, 48 Pa.Cmwlth. 615, 409 A.2d 1382 (1980).

Mrs. Shearer executed such an agreement (PA–176K) as a condition for receiving A.D.C. benefits. However, she did not execute a similar agreement (PA–176KM) acknowledging her liability for medical assistance payments. See: 55 Pa.Code § 177.83(c)(5). Because only the medical assistance payments are at issue in this appeal, see: *Shearer v. Moore*, supra, we need not consider the effect of the agreement signed by Mrs. Shearer.

■ The Commonwealth did not file a complaint against appellees (62 P.S. § 1974) or bring suit against the third party tortfeasor (62 P.S. § 1975). It was only after appellees' attorney had created a fund by settling the recipient's personal claim that the Commonwealth intervened and demanded to participate in distribution of the proceeds. In effect, the Commonwealth became subrogated to the rights of its recipient to the extent of $1,703. We have held that where a subrogor's attorney creates a common fund for the benefit of the subrogor and subrogee, the attorney is entitled to reimbursement from the subrogee for its proportion-

ate share of reasonable attorney's fees and expenses of litigation. *Associated Hospital Service of Philadelphia v. Pustilnik*, 262 Pa.Super. 600, 612, 396 A.2d 1332, 1338 (1979). See also: *Furia v. Philadelphia*, 180 Pa.Super. 50, 118 A.2d 236 (1955). We are of the opinion that in the absence of a clear legislative intent to the contrary, the rule should be the same where the subrogee is the Commonwealth.

■ Where, despite a clear right to proceed in its own right against the tortfeasor, the Commonwealth refrains from acting and it is the attorney for the welfare recipient who creates the fund from which the Commonwealth will benefit as subrogee, equity requires that the Commonwealth share in the cost of creating the fund. It would be manifestly unjust to permit the Commonwealth to recover its entire claim and permit it to avoid any part of the cost of creating the fund while requiring the welfare recipient to pay a disproportionately large share.

In *Furia v. Philadelphia*, supra, a city policeman, who was injured by a third party tortfeasor, received financial assistance from the city pursuant to the Act of June 28, 1935, P.L. 477, No. 193, § 1, as amended, 53 P.S. § 327 (now 53 P.S. § 637), during the period of his incapacity. The policeman retained an attorney, sued the tortfeasor and recovered a settlement. The city demanded reimbursement in full. This Court held that the equitable principles of subrogation applied and required the city to share in the policeman's costs of generating the fund. The Court commented:

"A situation can well be imagined where the employe would receive nothing for pain and suffering if the amount he recovered from the third party tortfeasor was not greater than the amount which he had received from the city for loss of wages during his period of incapacity. It would be much more equitable in all cases to require the city as well as the employe to bear a pro rata share of the expenses."

Id., 180 Pa.Super. at 58, 118 A.2d at 240.

Other jurisdictions which have considered this issue have held that the state is obliged to pay its pro rata share of

attorney fees incurred by a welfare recipient in obtaining a recovery against a third person. See: *Moss v. Glynn*, 66 Ill.App.3d 221, 22 Ill.Dec. 799, 383 N.E.2d 275 (1978); *Hedgebeth v. Medford*, 74 N.J. 360, 378 A.2d 226 (1977); *White v. Sutherland*, 92 N.M. 187, 585 P.2d 331 (1978). Applying equitable considerations of subrogation, the New Jersey Supreme Court concluded in *Hedgebeth v. Medford*, supra 74 N.J. at 372, 378 A.2d at 231, that requiring the state to contribute to the plaintiff's counsel fees would be equitable:

"[I]f the net amount recovered from the tortfeasor, after deduction of counsel fees and expenses, is equivalent to, or less than, the amount received in Medicaid payments, the State would be in a position to demand the entire recovery. In such a situation the victim would be left to bear the entire cost of bringing the suit including counsel fees even though the entire benefit of the judgment went to the State."

Appellant argues that since the legislative purpose of reimbursement statutes is to conserve public funds, the deduction of counsel fees and costs should not be allowed. The statutes, however, do not expressly or by necessary implication require that the Commonwealth receive the entire amount of the assistance given. Although the history of the legislation indicates a desire to minimize the costs of the program, it does not follow that the legislature intended that a needy recipient subsidize the Commonwealth's recovery of medical expenses. *Hedgebeth v. Medford*, supra.

Appellant also contends that the trial court is precluded by Section 512 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, § 512, as amended December 17, 1970, P.L. 935, No. 292, § 1, 71 P.S. § 192, which provides in pertinent part:

"It shall be unlawful for any department, other than the Department of the Auditor General, board, commission, or officer, of the Commonwealth, to engage any attorney to represent such department, board, commission, or officer, in any matter or thing relating to the public business of such department, board, commission or officer, without the approval in writing of the Attorney General."

78

We agree with the trial court that this section prohibits the hiring of outside legal counsel to represent an agency or department of the Commonwealth without written approval. Instantly, the Department of Public Welfare did not engage appellees' counsel, nor was the Commonwealth a principal party in the litigation which created the fund. No express or implied agreement was entered into between the Department and appellees, and thus the statutory provision is inapplicable. Cf: *Furia v. Philadelphia*, supra 180 Pa.Super. at 58–60, 118 A.2d at 240–41; *Hedgebeth v. Medford*, supra 74 N.J. at 373, 378 A.2d at 232.

■ We conclude, therefore, that statutory law does not preclude application of the equitable principle that where a plaintiff creates a fund from which one or more other parties benefit, those parties should contribute proportionately to the expense of creating the fund. *Hempstead v. Meadville Theological School*, 286 Pa. 493, 497, 134 A. 103, 104 (1926); *Furia v. Philadelphia*, supra. The reasonableness of an award of attorney fees, of course, is a matter which rests within the sound discretion of the trial judge and will be altered by an appellate court only when there is a clear abuse of discretion. *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968). We perceive no abuse of discretion in the instant case.

Order affirmed.